## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

CHRISTY DIANE HAYES,            )
                                )
        Plaintiff,              )
                                )
v.                              )        Case No. 4:16-cv-00881-SGC
                                )
SOCIAL SECURITY                 )
ADMINISTRATION,                 )
COMMISSIONER,                   )
                                )
        Defendant.              )

## MEMORANDUM OPINION

The plaintiff, Christy Diane Hayes, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Income.  (Doc. 1).  Ms. Hayes timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 15).  For the reasons that follow, the Commissioner's decision is due to be remanded.

## I.    FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Ms. Hayes initially applied for benefits on August 25, 2009.  (R. 70).  After her application was denied, Ms. Hayes requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on May 12, 2011. (R. 20). The ALJ found Ms. Hayes was not disabled, and after the Appeals Council denied review, Ms. Hayes appealed in this district in a case styled as *Hayes v. Colvin*, No. 12-0809-VEH (N.D. Ala. *filed* Mar. 13, 2012). U.S. District Judge Virginia Hopkins remanded the Commissioner's decision for further proceedings, holding both the Appeals Council and the ALJ failed to properly consider the opinion of Ms. Hayes's treating psychiatrist. *Id.*; (*See* R. 441-466). Following remand, a new hearing was held, after which the ALJ denied disability benefits on July 7, 2015. (R. 335-344). The Appeals Council denied review, and Ms. Hayes timely filed the instant appeal.

Ms. Hayes was thirty-three years old on the date of her original application and thirty-nine years old at the time of the ALJ's decision now under review; she has a high school education. (*See* R. 343-44). Ms. Hayes has no relevant past work experience. (R. 26, 343). Ms. Hayes originally claimed she became disabled on August 25, 2009, due to diabetes mellitus, asthma, and "nerves." (R. 134).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is

engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the

claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Ms. Hayes had not engaged in SGA since the alleged onset of her disability. (R. 337). At step two, the ALJ found Ms. Hayes suffered from the following severe impairments: asthma, diabetes mellitus, hypertension, bilateral carpal tunnel syndrome, obesity, anxiety, depression, obsessive compulsive disorder ("OCD"), and post-traumatic stress disorder ("PTSD"). (*Id.*).

At step three, the ALJ found Ms. Hayes did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 337). Before proceeding to step four, the ALJ determined Ms. Hayes had the RFC to perform light work as defined in 20 CFR § 416.967(b) with the following limitations: (1) never climbing ropes, ladders, or scaffolds; (2) no more than frequent handling, fingering, feeling, and performing gross and fine manipulation with both hands; (3) occasional exposure to pulmonary irritants; (4) no exposure to workplace hazards such as unprotected heights, dangerous or moving machinery, or uneven terrain; (5) occasional decision-making; (6)

occasional interaction with supervisors, coworkers, and the general public; and (7) no performance of tandem or team tasks. (R. 339). The ALJ also determined Ms. Hayes's RFC allowed her "to understand, remember, and carry out simple work instructions for two hours at a time" and, with normal breaks, to complete an eight-hour workday. (*Id.*).

At step four, the ALJ relied on the testimony of a vocational expert ("VE") to determine Ms. Hayes was capable of performing jobs existing in significant numbers in the national economy. (R. 344). The ALJ concluded his decision by finding Ms. Hayes was not disabled. (*Id.*).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  DISCUSSION

While Ms. Hayes suffers from a number of physical impairments, this appeal focuses on her psychiatric impairments.  On appeal, Ms. Hayes argues the ALJ erred by failing to give proper weight to the opinions of her treating psychiatrist, M. Elizabeth Lachman, M.D.[1]  (Doc. 12 at 9-13).  As explained below, the court agrees.  Specifically, the ALJ's decision to give little weight to Dr. Lachman's opinion was not supported by substantial evidence and resulted from the application of improper legal standards.

The opinion of a claimant's treating physician is entitled to substantial or considerable weight absent a showing of good cause to the contrary.  *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997).  Failure to articulate the reasons for giving less weight to the opinion of a treating physician is reversible error.  *Id.* Good cause exists where a treating physician's opinion: (1) is not supported by the evidence; (2) is contradicted by the evidence; or (3) is conclusory or inconsistent with the doctor's own medical records.  *Phillips*, 357 F.3d at 1240-41.

"Generally, a treating doctor's opinion is entitled to more weight than a consulting doctor's."  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). Reports from a claimant's long-time treating physician are particularly probative. *Chester v. Bowen*, 792, F.2d 129, 131 (11th Cir. 1986).  Conversely, a one-time

---

[1] The Commissioner's analysis of Dr. Lachman's treatment records was the basis on which Judge Hopkins remanded Ms. Hayes's first appeal.  (*See* R. 441-66).

examiner's opinion is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). While the ALJ can "reject the opinion of any physician when the evidence supports a contrary conclusion . . . the ALJ is required [] to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Furthermore, the ALJ must explain why an opinion is inconsistent with the medical record; he or she cannot simply make a conclusory pronouncement that the opinion is inconsistent with evidence of record. *See Bell v. Colvin*, No. 15-0743, 2016 WL 6609187 at *4 (M.D. Ala. Nov. 7, 2016).

Dr. Lachman first treated Ms. Hayes in January 2011. (R. 1013-17). Dr. Lachman noted Ms. Hayes's history of treatment for depression and anxiety and diagnosed her with OCD and chronic PTSD. (*Id.*). Dr. Lachman assigned Ms. Hayes a Global Assessment of Functioning ("GAF") of 46 and prescribed medication. (*Id.*). On a March 18, 2011 follow-up visit, Dr. Lachman noted Ms. Hayes's ongoing OCD symptoms, assigned a GAF of 43, and adjusted her medications. (R. 296; *see* R. 300). After a July 11, 2014 visit, Dr. Lachman assigned a GAF of 44. (R. 1012). At a January 22, 2015 visit, Dr. Lachman noted Ms. Hayes's medications but did not assign a GAF. (R. 1011). In an April 4, 2015

evaluation, Dr. Lachman noted Ms. Hayes's psychiatric diagnoses, assigned a GAF of 46, and concluded she was "minimally functional at home and in the community" and was "not safely functional in the occupational setting." (R. 1008-10). Dr. Lachman opined Ms. Hayes would be unable to work for at least one to two years, if not permanently. (R. 1010).

Prior to the first ALJ hearing, Dr. Lachman completed a Medical Source Opinion Form ("MSO"), opining Ms. Hayes had: (1) moderate limitations[2] maintaining "activities of daily living" and understanding, remembering, carrying out, and using judgment in simple, work-related decisions; (2) marked limitations[3] responding appropriately to supervisors, coworkers, and the general public, responding to customary work pressures, maintaining social functioning, as well as using judgment, understanding, remembering, and carrying out "detailed or complex work-related decisions"; and (3) extreme limitations[4] dealing with changes in a routine work setting, as well as maintaining attention, concentration or pace for two hour periods. (R. 302-03).

At the request of Ms. Hayes's counsel, Dr. Lachman clarified her MSO on October 12, 2011, reiterating her diagnoses of OCD and PTSD. (R. 316). Dr. Lachman also noted Ms. Hayes's severe, recurrent depression with psychotic

---

[2] A moderate limitation "affects but does not preclude [the] ability to function." (R. 302).

[3] A marked limitation "seriously interferes with [the] ability to function." (R. 302).

[4] An extreme limitation indicates "no useful functioning." (R. 302).

symptoms and explained that, despite compliance with appointments and medications, Ms. Hayes continued to experience mood swings, depression, nightmares, flashbacks, and other symptoms of serious mental illness. (*Id*.). Dr. Lachman assigned a GAF of 46 and noted Ms. Hayes's severe OCD would be intolerable to supervisors and coworkers and would prevent her from finishing most tasks. (*Id.*). Dr. Lachman clarified that her MSO was based on her examinations of Ms. Hayes and her experience and skill as a psychiatrist. (R. 316-17). Dr. Lachman concluded Ms. Hayes would have: (1) extreme problems working an eight-hour day, taking orders from supervisors, working with coworkers, adjusting to change, and following complex instruction; (2) marked problems working a four-hour day, meeting the public, and following simple instructions; and (3) moderate problems performing a routine job. (R. 317). Dr. Lachman opined Ms. Hayes would be unable to reenter the workforce for "not less than 12-24 months, but probably never." (*Id.*).

Also appearing in the record is the consultative examination performed by Christopher Randolph, M.D., on March 18, 2015. (R. 1003-06). After summarizing his observations and Ms. Hayes's complaints, Dr. Randolph concluded he did "not see any impairment in reality testing that would warrant a psychiatric disability." (R. 1003-04). Dr. Randoph did not assign a GAF. In the

attached MSO, Dr. Randolph opined Ms. Hayes suffered mild limitations[5] in all areas. (R. 1005-06).

In determining Ms. Hayes's RFC here, the ALJ assigned little weight to Dr. Lachman's opinions. (R. 340-42). The ALJ concluded Dr. Lachman's opinions were based on a spotty treatment history and were inconsistent with her own treatment records, as well as the records from Ms. Hayes's other medical providers. (R. 340). The ALJ also found Dr. Lachman's opinions in the April 4, 2015 evaluation were inconsistent with her own findings, pointing to her repeated assessments of Ms. Hayes's GAF. Specifically, the ALJ noted Dr. Lachman consistently assigned GAF scores between 41 and 50, which the ALJ characterized as "suggestive of serious, but not marked or debilitating psychiatric symptom severity." (R. 341). While assigning little weight to Dr. Lachman's opinions, the ALJ assigned "some weight" to: (1) Dr. Randolph's MSO, generated after his one-time consultative examination; and (2) the opinion of Dr. Samuel Williams, a non-examining consultant, which concluded Ms. Hayes experienced no restrictions in her activities of daily living and mild restrictions in social functioning, attention, and concentration. (R. 342).

The ALJ's reasons for discrediting Dr. Lachman's opinions are not supported by substantial evidence. First, the ALJ erred in discounting Dr. Lachman's opinion

---

[5] Mild limitations are described as "slight," allowing an individual to "function well." (R. 1005).

due to her infrequent treatment—"fewer than six occasions over a four year period"—of Ms. Hayes. (R. 340). While the Eleventh Circuit has cited infrequent treatment as a proper basis for discounting a treating physician's opinions, those cases involved opinions based on less treatment and other indicia of unreliability. *See Sullivan v. Comm'r*, 353 F. App'x 394, 397 (11th Cir. 2009) (affirming rejection of treating physician's opinion where the physician was clearly biased, did not document objective findings, only treated the claimant "a few times over six years," and the opining physician's diagnoses were contradicted by three other physicians); *Bliss v. Comm'r*, 254 F. App'x 757, 758 (11th Cir 2007) (affirming rejection of treating physician's opinion where the physician treated the claimant on two occasions, the opinion was contradicted by treatment notes, and the opinion was generated five years after the last treatment); *see also Lacy v. Barnhart*, 309 F. Supp. 2d 1345, 1351 (N.D. Ala. 2004) (reversing and remanding to award benefits where the ALJ refused to afford substantial weight to physician who treated claimant on only four occasions and had not treated claimant for the five months preceding the hearing). As explained below, substantial evidence does not support the ALJ's conclusions that Dr. Lachman's opinions were inconsistent with her own treatment records or those of other providers. Accordingly, Ms. Hayes's infrequent visits to Dr. Lachman do not provide good cause for rejecting her opinions.

Next, the ALJ's conclusion that Dr. Lachman's opinions were contradicted by the records of Ms. Hayes's other providers is not supported by substantial evidence. The ALJ found that emergency room and primary care records "consistently show normal psychiatric exams with no evidence of consistent anxiety, delusions, loose associations, abnormal thinking or depression." (R. 340). In support of this conclusion, the ALJ cites generally to: (1) Med Assist treatment records from March 21, 2006, through January 7, 2015; (2) Marshall Medical Center records reflecting emergency treatment Ms. Hayes received for purely physical ailments from 2010-2014 and her pregnancy and Cesarean delivery in 2007. (R. 340).

Regarding the records from Med Assist, it should be noted that many of these records relate to treatment Ms. Hayes received prior to her alleged onset of disability. However, to the extent the Med Assist records are intelligible, they reveal longstanding psychiatric complaints, diagnoses, and treatment. These records repeatedly reveal Ms. Hayes's complaints of anxiety (R. 197, 201, 219, 228, 291, 866, 871), panic attacks (R. 191, 228), insomnia (R. 192), depression (R. 854), and obsessive thoughts or behaviors (R. 228, 291). Med Assist providers repeatedly noted Ms. Hayes's diagnoses of social phobia and/or depression (R. 226-28, 291, 311, 835-36, 843, 845-46, 852, 856, 860, 864, 869, 874, 879, 884, 890, 898), general anxiety disorder (R. 189, 191, 196, 216, 219, 313, 835-36, 843,

845-46, 851, 856, 860, 864, 869, 874, 879, 884, 890, 903), and insomnia (R. 189, 192). More often than not, the Med Assist records do not include any indication regarding Ms. Hayes's psychiatric condition, but records repeatedly note it was "abnormal." (R. 197, 201, 205, 219, 291).[6] All of the records cited by the ALJ reveal Ms. Hayes was consistently prescribed medicines to treat her psychiatric conditions.

The medical records from Marshall Medical Center are not particularly probative, as they reflect Ms. Hayes's treatment for purely physical conditions. Moreover, the ALJ erred to the extent he relied on Ms. Hayes's failure to pursue emergency treatment for her psychiatric impairments, particularly where she was continuously taking medications to treat her psychiatric symptoms. *See Wallace v. Barnhart*, 256 F. Supp. 2d 1360, 1371–72 (S.D. Fla. 2003) ("the fact that there is no evidence that Plaintiff was hospitalized or received emergency room treatment is an inadequate justification for rejecting" the treating psychiatrist's opinion where Plaintiff was consistently prescribed psychotropic medications). For the foregoing reasons, the ALJ's conclusion that the medical records "consistently show normal psychiatric exams with no evidence of consistent anxiety, delusions, loose

---

[6] The form Med Assist used to record findings changed over time, and the more recent forms do not include boxes to note normal or abnormal psychiatric findings. However, at least one of the new forms reflects the physician "observed anxiety" during a January 10, 2014 physical exam. (R. 866).

associations, abnormal thinking, or depression" is not supported by substantial evidence.  (R. 340).

Finally, the ALJ's conclusion that Dr. Lachman's opinions were inconsistent with her own treatment records is not supported by substantial evidence.  In reaching this conclusion, the ALJ found Dr. Lachman's "treatment notes consistently include the assignment of global assessment of functioning (GAF) scores between 41 and 50, suggestive of serious, but not marked or debilitating psychiatric symptom severity."  (R. 341).  While the ALJ accurately described the range of GAF scores assigned by Dr. Lachman, his conclusion that these assessments were inconsistent with Dr. Lachman's  MSO opinions is not supported by substantial evidence.

According to the American Psychiatric Association, a GAF between 41 and 50 indicates:

> Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)

*Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Rev. 2000). Any semantic distinction the ALJ drew between "serious" and "marked" symptoms notwithstanding, there is no contradiction between Dr. Lachman's GAF assessments and her opinions regarding Ms. Hayes's impairments.  Accordingly, the ALJ's finding of inconsistencies is not supported by substantial evidence.

Moreover, courts sitting within this circuit have found GAF scores between 41 and 50 could support a claim for disability based on psychiatric impairments. *See Wallace*, 256 F. Supp. at 1364 (reversing Commissioner and awarding benefits where claimant was assigned a GAF of 40-50).

For all of the foregoing reasons, substantial evidence does not support the ALJ's decision to accord little weight to Dr. Lachman's opinions regarding Ms. Hayes. As a result, the ALJ applied improper legal standards in assessing Dr. Lachman's opinions.

## IV.    CONCLUSION

Upon review of the administrative record and the briefs of the parties, the court finds the Commissioner's decision is not supported by substantial evidence and did not apply the correct legal standards. Accordingly, the Commissioner's decision is due to be remanded for further consideration. A separate order will be entered.

**DONE** this 28th day of September, 2017.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE